**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**ANNE ELIZABETH MAULDIN**                    **PLAINTIFF**

**VS.**                              No. **3:15-CV-115-MPM-JMV**

**UNITED STATES DEPARTMENT OF**
**AGRICULTURE, AND TOM VILSACK,**
**SECRETARY OF UNITED STATES**
**DEPARTMENT OF AGRICULTURE**                    **DEFENDANTS**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT,  THE UNITED STATES OF**
**AMERICA,  MOTION TO DISMISS OR, IN**
**THE ALTERNATIVE, MOTION FOR**
**SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff, Anne Elizabeth Mauldin, brings this action against The United States of America,

acting through the United States Department of Agriculture (USDA), through the National

Resources Conservation Service  (NRCS) agency.    As set forth below, Plaintiff's claims against

The United States of America should be dismissed with prejudice.

## II.    ISSUES PRESENTED

Whether  the  NRCS  subjected  the  Plaintiff  to  discrimination  based  on  sex  (female)

and  age  (D.O.B.:  Redacted  1955),  when on or about September 24, 2013, she learned she was

not selected for the GS-0810-12, Supervisory Civil Engineer position, advertised under

Vacancy Announcement  Number MS-932954-YN.

III.   **ADMINISTRATIVE HISTORY**

Plaintiff contacted an Equal Employment Opportunity (EEO) Counselor on  October 25, 2013.  *See* Defendant's Exhibit 1:  EEO Counselor's Report.  Informal attempts at  resolution were unsuccessful, and the Plaintiff was issued a Notice of Right to File (NRF) a Formal EEO complaint, on January 17, 2014.  *See* Defendant's Exhibit 2: Letter Dated January 14, 2014. The Plaintiff filed a formal E E O  complaint dated February 4, 2014.  *See* Defendant's Exhibit 3: Letter Dated February 12, 2014.  The Complaint was accepted  and referred for investigation  on February 12, 2014.  *Id*.  A copy of the Report  of Investigation was  provided to the Plaintiff per letter dated  May 29, 2014.  *See* Defendant's Exhibit 4.  The Plaintiff requested a hearing before an EEOC Administrative Judge on June 20, 2014.  *See* Defendant's Exhibit 5.  The Plaintiff subsequently  provided  notice to the Equal Employment Opportunity Commission, that she desired a Final Agency Decision (FAD).  *See* Defendant's Exhibit 6.  In accordance with EEOC regulations, the USDA issued a FAD on April 28, 2015, concluding that the weight of the evidence indicated that discrimination had not occurred with respect to the issues presented.  *See* Defendant's Exhibit 7.  Plaintiff, in turn, filed the suit at hand on July 10, 2015.

IV.   **STATEMENT OF MATERIAL UNDISPUTED FACTS**

Plaintiff is an employee who works as a GS-0890-11, Agricultural Engineer, in the Batesville Field Office of the Natural Resources Conservation Service (NRCS), U.S. Department of Agriculture (USDA) in Batesville, Mississippi.  Plaintiff was hired in 1989 in the GS-05 position and has maintained her employment with USDA for over twenty-four years.

On August 19, 2013, Plaintiff applied for the Supervisory Civil Engineer position advertised in NRCS Job Announcement Number: MS-932954-YN, which was open from August

5, 2013, to August 19, 2013.  On or about September 24, 2013, she learned that she was not selected for the supervisory position.  Instead, the position was awarded to a younger male, who was thirty-eight years old, with approximately fourteen years of experience.

As a female, who was fifty-eight years old at the time of the selection, Plaintiff contends she was subjected to discrimination based on sex (female) and age (D.O.B.: Redacted 1955).  *See* Plaintiff Complaint Page 3.

      a.  <u>**Selection Process**</u>

George Thomas Heard III (Tom or Mr. Heard) is a GS-13 Area Conservationist, for the Natural Resources Conservation Service (NRCS), U.S. Department of Agriculture (USDA), in Tupelo, Mississippi.  Mr. Heard has been in his current position for more than seven (7) years. His first line supervisor is Kurt Readus, State Conservationist. His second line supervisor is James Tillman, Regional Conservationist for Natural Resources Conservation Service.  Mr. Heard served as the selecting official for the supervisory engineer position at issue.  *See* Exhibit 8: Affidavit of George Heard.

Mr. Heard has acted as Plaintiff's supervisor during times when the supervisory engineer position was vacant. Mr. Heard knew Plaintiff's gender and approximate age at the time of his decision.  Mr. Heard made the final `hiring` decision by assembling a panel that listened to the interviews, took notes, and made recommendations based on the interviews.  *See* Defendant's Exhibit 9:  Interview Notes on Nicholas Specker and Plaintiff.   The panel was made up of Mr. Heard (male aged fifty-eight), William Russell, Supervisory District Conservationist, (male aged fifty-one) from Hazelhurst, Mississippi, and Shannon McCarty, Supervisory Civil Engineer, (female aged thirty-eight) from Pearl, Mississippi. *See* Defendant's

Exhibit 8: Affidavit of George Heard, Defendant's Exhibit 10: Affidavit of William Russell, and Defendant's Exhibit 11: Affidavit of Shannon McCarty.

Two candidates were scheduled for interview: Plaintiff and Nicholas (Nick) Specker. *See* Defendant's Exhibit 8: Affidavit of George Heard. Both interviewees were qualified for the position. Interviews were conducted telephonically on the same day approximately one hour apart. *Id*. The same questions were asked of both candidates, and each interview lasted between forty- five (45) minutes and one hour. *Id.* At the end of the interviews, Mr. Heard asked both panelists, Mr. Russell and Ms. McCarty, about their impressions and for a recommendation. The consensus was that Mr. Specker was the best candidate for the position. All agreed that the interviews showed Mr. Specker had more of the skills needed to be successful in the Supervisory Civil Engineer position. Specifically, Mr. Specker was more technologically savvy and had taken more initiative in program application than Plaintiff. *Id*.

### b. <u>Qualifications</u>

Plaintiff contends that she was better qualified than the selectee, Nicholas Specker. Both candidates submitted resumes for the position. *See* Defendant's Exhibit 12 and 13: Resumes of Specker and Mauldin; *See* also Exhibit 9: Interview Notes on Nicholas Specker and Plaintiff. Both candidates were found to be qualified.

### i. <u>Anne Mauldin</u>

At the time of application, Plaintiff had approximately 24 years of experience. She was hired in 1989 as a GS-5 Agricultural Engineer. She received her Bachelor's Degree in Agricultural Engineering from Mississippi State University, in 1989. She currently works on the west side of Area 1 in Mississippi, which consists of hill counties as well as delta counties. She

has worked with the State Agricultural Engineer, the State Conservation Engineer, and the State Water Management Specialist to carry out engineering programs in Area I. She is certified as a Level 2 Contracting Officer's Representative. *See* Defendant's Exhibit 1.

Plaintiff has surveyed and/or designed over 200 lakes (flood routed), 500 grade stabilization structures, 1,000,000 acres of irrigation, 90 miles of debris removal and 22,000 linear feet of stream bank stabilization. She has developed and designed waste management systems for 66,000 animal units annually. She has provided irrigation plans, designs and cost estimates, as well as designed micro-irrigations systems for over 100 acres of crop land. She has also surveyed and designed complex engineering designs by modifying and using standard drawings in various software programs including AutoCAD, GPS, Arcview, and WebSoil Survey.

Her most notable experiences include her involvement with the Hurricane Katrina Emergency WaterShed Protection Efforts in 2006. Her mission was to lead and supervise efforts to evaluate and formulate emergency drainage measures needed and to develop plans, cost estimates, damage survey reports, designs, drawings and specifications for immediate contracting in Forrest County, Mississippi.

Moreover, in 1994, Plaintiff went on detail to Wenatchee, Washington during interagency efforts for the Great Chelan Fires. She served as Engineer with 150 structures (small check dams to large grade control structures and contour timber felling). She used this experience and applied it in regards to rock check dams as grade stabilization structures. The first rock check dams in Mississippi were installed in Marshall County. She provided designs, drawings, and specifications for the structures in the mid 1990's. *See* Defendant's Exhibit 12: Affidavit of Plaintiff.

Consequently, Plaintiff has extensive experience in working as an engineer for NRCS. Due to this experience, Plaintiff believes she should have been selected for the vacant Supervisory Engineer position.

### ii.  Nicholas Specker

At the time of application, Mr. Nicholas (Nick) Specker had approximately fourteen years of experience.   He was hired by NRCS in 2002 as a GS-09 Agricultural Engineer.  From 1999-2002, he was employed by Yazoo Mississippi Delta Water Management.   He received his Bachelor's Degree in Agricultural Engineering Technology and Business from Mississippi State University in 1998.  He received an additional Bachelor's Degree in Biological Engineering from Mississippi State University in 1999.

Mr. Specker has provided technical guidance and assistance to field office personnel, in fourteen counties, in the application of engineering standards and criteria on structural practices. He has provided training for field office personnel and delegated approval authority in all phases of engineering activities, including surveying, note-keeping and documentation, hydraulics, hydrology, and structure design, installation and inspection.

Mr. Specker has developed and presented training materials on designing engineering practices, adhering to conservation practice standards, surveying field applications for GPS units, planning with Toolkit software program, and mapping with ArcMap software program.  He has also used LIDAR software programs by extracting design data from its digital elevation models.

Further, he has developed and maintained Excel spreadsheets that were used by all Mississippi NRCS field offices to design, estimate costs, and associate Environmental Quality Incentives Program (EQIP) payments with grade stabilization structures, aiding in the development of conservation plans and EQIP contracts.

Mr. Specker has assisted field offices and landowners in the development of Storm Water Pollution Prevention Plans for the new constructions of dairy, beef, swine, and poultry operations, and helped gather all necessary information required by the Mississippi Department of Environmental Quality to issue the Confined Animal Feeding Operation permit.

Mr. Specker has served two 90-day details as Supervisory Civil Engineer for Area 1 of Mississippi NRCS and as Acting Supervisory District Conservationist for Pontotoc County, Mississippi during the vacancy left after the Supervisory District Conservationist retired.

He is proficient in NRCS software programs including AutoCad, Excel, Word, Outlook, and Power Point. He is highly skilled with handheld and survey grade GPS, hand level, auto level, laser level, and total station instrument. He is also proficient in field specific programs including Toolkit, ArcMap, Protracts and PRS. He is adept with NRCS software, including Engineering Field Tools, Engineering Field Handbook 2, Win Pond, Win TR-55, and Manure Management Planner. *See* Defendant's Exhibit 12: Resume of Nicholas Specker.

### c. <u>Ultimate Outcome</u>

On or about September 24, 2013, Plaintiff learned that Mr. Specker was selected for the position. *See* Exhibits 8 and 14: Affidavit of George Heard and Plaintiff. Mr. Heard explained that the position was no longer a traditional engineer's position. Much of the work done in the past involved very large projects. As time has passed, NRCS's work has diminished substantially in regards to these large projects. Because the work has changed, the skills needed are very different from those needed ten years ago. Mr. Heard further explained that Plaintiff's experience was with large project situations which correlate with a traditional engineer's position. The current position requires special skills in computer programs such as ToolKit, ArcGis and LIDAR.

The interviewing panel (Ms. McCarty and Mr. Russell) noted that Mr. Specker's technology experience exceeded Plaintiff's level of experience. *See* Defendant's Exhibit 10 and 11: Affidavits of William Russell and Shannon McCarty.

Mr. Heard noted that Mr. Specker took the initiative to learn the ToolKit program which is used by the field offices. Becoming proficient in this program was not required, but to better serve his customers he took the initiative to learn the program. *See* Defendant's Exhibit 8: Affidavit of George Heard. Ms. McCarty noted that Mr. Specker not only became proficient in Toolkit, LIDAR, and GIS programs, but he learned the software and became a trainer. *See* Defendant's Exhibit 11: Affidavit of Shannon McCarty.

Mr. Russell noted that Mr. Specker developed a program in EXCEL for the EQIP, to select the proper scenario for Grade Stabilization of the structure payment schedule. This program development ranked high in Mr. Russell's opinion because engineers who develop programs such as this show that they are looking out for the field offices that makes job performance easier for all involved. *See* Defendant's Exhibit 10: Affidavit of William Russell.

Mr. Heard informed Plaintiff that the selectee, Mr. Specker, had more knowledge in technology, programs, and policy. *See* Defendant's Exhibit 8 and 14: Affidavits of George Heard and Plaintiff.

After being told that Mr. Specker's skill set was a better match for the position, Plaintiff complained that Mr. Specker had a greater advantage over her, in that he was located in an office building with individuals who were highly skilled in Toolkit, ArcGIS and LIDAR. She complained that the selectee learned about the programs because of all the help he received from his co-workers in the area office. *See* Defendant's Exhibit 14: Affidavit of Plaintiff.

Plaintiff now complains that she was discriminated against in the selection process due to her age and sex.

## V.    STANDARD OF REVIEW

### a.   Motion to Dismiss Pursuant to Rule 12(b)(6).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Rule 8 "does not require 'detailed factual allegations,'" but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

To withstand a Rule 12(b)(6) motion, a "**complaint must allege 'more than labels and conclusions,' " and " 'a formulaic recitation of the elements of a cause of action will not do.' "** *Norris v. Hearst Trust,* 500 F.3d 454, 464 (5th Cir.2007) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders '**naked assertion[s]' devoid of 'further factual enhancement.' "** *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 [alteration in original]

(quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but **must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.**' " *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007) (footnote omitted) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " *Id.* (quoting *Twombly,* 550 U.S. at 558, 127 S.Ct. 1955).

**b. <u>Summary Judgment Standard</u>**

The purpose of a summary judgment is "to enable a party who believes [that] there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." <u>*Fed.R.Civ.P. 56.*</u> The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.,* 919 F.2d 301, 303 (5th Cir.1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case.

*v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the **mere absence of evidence** supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.,* 468 F.3d 237, 241 (5th Cir.2006) (citing *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (5th Cir.2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (per curiam) (citing *Celotex,* 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little,* 37 F.3d at 1075. Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence *in the record* and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson,* 477 U.S. at 248. If the nonmovant is unable to make such a showing, the court must grant summary judgment. *Little,* 37 F.3d at 1075.

## VI.   <u>ARGUMENT</u>

### A.  <u>Legal Standard for Title VII Claims</u>

Title VII provides that it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, national origin, or gender...." <u>42 U.S.C. § 2000e–2(a)(1).</u> "In the context of Title VII litigation, two types of discrimination claims are recognized: disparate treatment and disparate impact." *Munoz v. Orr,* 200 F.3d 291, 299 (5th Cir .2000). "Disparate treatment refers to ***deliberate discrimination*** in the terms or conditions of employment, ... on account of race, national origin, or gender." *Id.* (emphasis added). "Liability depends on whether the protected trait ... ***actually motivated*** the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141 (2000) *(*emphasis added*).* Disparate impact claims, recognized in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), do not require proof of intent to discriminate. Instead, they focus on facially neutral employment practices that create such statistical disparities disadvantaging members of a protected group that they are "functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

In order to help district courts analyze summary judgment motions in employment discrimination cases, the Supreme Court has established a burden-shifting scheme for evaluating claims relying on circumstantial evidence. *See McDonnell Douglas v. Green,* 411 U.S. 792, 802–05 (1973); *Baker v. Am. Airlines, Inc.,* 430 F.3d 750, 753 (5th Cir.2005). The plaintiff must first demonstrate a prima facie case of discrimination. If the plaintiff meets her burden, the defendant must rebut this case by producing a legitimate, nondiscriminatory reason for its actions. If the defendant meets its burden, the presumption disappears, and the issue becomes discrimination

*vel non. See Reeves,* 530 U.S. at 142. The plaintiff can establish disparate treatment by showing that the defendant's explanation for the employment action is a pretext for discrimination. *Id.* at 143. Still, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If the plaintiff fails to establish a *prima facie* case, or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted. *Bauer v. Albermarle Corp.,* 169 F.3d 962, 966 (5th Cir.1999).

### B.  Legal Standard for ADEA Claims

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1).   In contrast to § 623(a)'s prohibition of employment decisions "because of such individual's age," the federal sector provision states that "all personnel decisions affecting employees or applicants for employment [with various federal agencies] who are at least 40 years of age ... shall be made free from any discrimination based on age." *Id.* § 633a(a).

Two  types of discrimination claims are authorized under ADEA: disparate treatment and disparate impact. Age Discrimination in Employment Act of 1967, § 4(a)(1, 2), 29 U.S.C. § 623(a)(1, 2); *Munoz,* 200 F.3d at 299; *Smith v. City of Jackson, Miss.,* 544 U.S. 228, 240, 125 S.Ct. 1536 (2005).  Disparate impact claims do not require the intent to discriminate. *Griggs,* 401 U.S. at 431.   Disparate treatment refers to deliberate discrimination in the terms or conditions of employment. *Munoz,* 200 F.3d at 299.

As in Title VII claims, the *McDonnell Douglas* framework also applies to claims of disparate treatment under the ADEA. *See Moss v. BMC Software, Inc.,* 610 F.3d 917, 922 (5th Cir.2010). However, the Supreme Court has rejected the application of Title VII's "motivating factor" element to ADEA claims. *See Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). To establish a disparate treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* That is, age must be "*the* 'reason' that the employer decided to act." *Id.* (emphasis added).

### C.  Disparate Treatment

#### i.  Title VII Prima Facie Case

Title VII proscribes an employer from discriminating against any individual because of that individual's sex. 42 U.S.C. § 2000e–2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 651 (5th Cir. 2004).   Intentional discrimination can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 219 (5th Cir.2001). Because Plaintiff presents no direct evidence of discrimination, her claim should be analyzed using the framework set forth in *McDonnell Douglas.*

To establish a prima facie case of sex discrimination under Title VII, Plaintiff is required to show: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *See Willis v. Coca Cola Enters., Inc.,* 445 F.3d 413, 420 (5th Cir. 2006).

In this matter, USDA agrees that Plaintiff has presented a prima facie case in regards to sex discrimination. *See* Exhibit 7, Final Agency Decision (FAD).  Plaintiff is female, and

therefore a member of the protected class. She was qualified for the Supervisory Civil Engineer position. She suffered an adverse employment action in not being selected. Nicholas Specker, a similarly situated male outside of her protected class, received the position.

### ii. ADEA Prima Facie Case

To establish a prima facie case of discriminatory treatment based on age, plaintiffs are required to prove: 1) "they are within the protected class"; 2) "they are qualified for the position"; 3) "they suffered an adverse employment decision"; and 4) "they were replaced by someone younger or treated less favorably than similarly situated younger employees. *Leal v. McHugh,* 731 F.3d 405 (5th Cir.2013). Under the statute, the protected class includes individuals who are at least forty years old. *See* 29 U.S.C. §§ 631(a), 633a(a).

In this matter, USDA agrees that Plaintiff has presented a prima facie case in regards to age discrimination. *See* Exhibit 7, Final Agency Decision (FAD). Plaintiff was fifty-eight years old at the time of the decision, and therefore a member of the protected class. She was qualified for the Supervisory Civil Engineer position. She suffered an adverse employment action in not being selected. Nicholas Specker, a similarly situated male aged thirty-eight at the time of the decision, was outside of her protected class and received the position.

### iii. Legitimate Non-Discriminatory Reason (ADEA & Title VII)

The *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—*i.e.,* the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "[T]he defendant must clearly set forth, through the introduction of admissible evidence," reasons for its

actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Id.* It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

As to the legitimate non-discriminatory reason, the defendant's reason for the adverse employment action need not be persuasive or credible. *Fife v. Vicksburg Healthcare, LLC,* 945 F.Supp.2d 721, 731 (S.D.Miss.2013) (citing *Hicks*, 509 U.S. at 509). Instead, the defendant's burden is to produce "evidence, which, '*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Price v. Fed. Express Corp.,* 283 F.3d 715, 720 (5th Cir.2002) (quoting *Hicks,* 509 U.S. at 509).

As stated in the undisputed facts supra, Mr. Nicholas Specker was selected because he had more knowledge in technology, programs, and policy. *See* Exhibits 8 and 14: Affidavit of George Heard and Plaintiff. The interviewing panel (Ms. McCarty and Mr. Russell) noted that Mr. Specker's technology experience exceeded Plaintiff's level of experience. *See* Exhibits 10 and 11: Affidavits of William Russell and Shannon McCarty. Mr. Heard, the selecting official, noted that Mr. Specker took the initiative to learn the ToolKit program which is used by the field offices. *See* Exhibit 8: Affidavit of George Heard. Ms. McCarty noted that Mr. Specker not only became proficient in Toolkit, LIDAR, and GIS programs, but he learned the software and became a trainer. *See* Exhibit 11: Affidavit of Shannon McCarty. Mr. Russell noted that Mr. Specker developed a program in EXCEL for the EQIP to select the proper scenario for Grade Stabilization of the structure payment schedule. This program development ranked high in Mr. Russell's opinion because engineers who develop programs such as this show that they are

looking out for the field offices that makes job performance easier for all involved. *See* Exhibit 10: Affidavit of William Russell.

Mr. Specker's skill set was believed to be a better match for the position. *See* Exhibit 8: Affidavit of George Heard. "An employer's choosing the best qualified candidate constitutes a legitimate, non-discriminatory justification for its failure to promote an employee." *Caldwell v. University of Houston*, 520 Fed App'x 289, 294 (5th Cir.2013). Because the record presents evidence of legitimate non-discriminatory reasons, the inference of discrimination raised by Plaintiff's prima facie case is sufficiently negated.

### iv.   Pretext (ADEA & Title VII)

In regards to Title VII, Plaintiff is now afforded a full and fair opportunity to show that the defendant's proffered explanation is not true, i.e., that it is a pretext for discrimination. *Price,* 283 F.3d at 720. Pretext may be exposed "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Moss,* 610 F.3d at 922. A claimant's prima facie case, combined with sufficient proof that the employer's proffered justification is false, may permit the trier of fact to determine that the employment decision was motivated by discrimination. *Reeves,* 530 U.S. at 148. However, there will also be cases where no reasonable jury could conclude that the employment action was discriminatory in nature, notwithstanding the plaintiff's showing of a prima facie case and sufficient evidence to negate the defendant's justification. *Id.* "The ultimate question is whether the employer **intentionally discriminated**…." *Id.* at 146.

In order to prevail on a disparate-treatment claim under the ADEA, Plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause for the adverse employment

action. *Gross,* 129 S.Ct. at 2351.   That is, age must be "*the* 'reason' that the employer decided to act." *Id.*

In regards to both ADEA as well as Title VII, Plaintiff fails to demonstrate pretext. Plaintiff cannot show that the Defendant *intentionally discriminated* against her on the basis of her sex and age.  Nor can she show that her sex was a motivating factor in the selection process. Neither can Plaintiff show that but for her age, she would have been selected for the position.

## Pretext:  Statistical Disparity

Plaintiff's Complaint provides statements alleging statistical disparities in hiring. According to the "Facts" section of Plaintiff's Complaint, subparagraph 4):  "At the time of filing Plaintiff's EEO Complaint of Employment Discrimination, there were four GS-12 Supervisory Civil Engineers within the State of Mississippi.  Three were males.  One was female.  On information and belief, all GS-12 Supervisory Civil Engineers are younger than Plaintiff.  At the time of the filing of Plaintiff's EEO Complaint of Employment Discrimination, three of the Supervisory Civil Engineers were under the age of 40."

The "Facts" section of her Complaint, subparagraphs 5) and 6) provide similar statistical disparities.   These statistical disparities, standing alone, do not demonstrate intentional discrimination against the Plaintiff.  That is, even taken as true, Plaintiff's statistics alone do not have "substantial probative value" to withstand summary judgment.   *Cheatham v. Allstate,* 465 F.3d 578, 585 (5th Cir.2006); *Bauer,* 169 F.3d at 967; *EEOC v. Tex. Instruments, Inc.,* 100 F.3d 1173, 1185–86 (5th Cir.1996). Nor does a complaint suffice under Rule 12(b)(6) if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal,* 556 U.S. at 678.

While statistical evidence can be utilized by a disparate treatment plaintiff to help rebut the employer's non-discriminatory explanation, more than statistics are usually necessary to rebut

an employer's strong showing of a legitimate, non-discriminatory reason. *Roberson v. Alltel Info. Servs.,* 373 F.3rd at 654. The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination. *Cheatham,* 465 F.3d at 585; *Tex. Instruments, Inc*., 100 F.3d at 1185. Plaintiff offered conclusory statistics without any context. Because they are devoid of context, they are not probative of discriminatory intent against the Plaintiff and therefore, not sufficient to raise a fact issue as to pretext. *See Cheatham*, 465 F.3d at 583.

In sum, Plaintiff's Complaint has failed to present *any* evidence that the forbidden characteristics of sex and age played a role in the selecting official's hiring decision. To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and " 'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust,* 500 F.3rd 454, 464 (5th Cir.2007). Due to the absence of evidence, a reasonable fact-finder cannot infer gender discrimination. Thus, the Complaint should be dismissed in accords with *Fed. R. Civ. P.* 12(b)(6) or, in the alternative, summary judgment should be granted in accords with *Fed.R.Civ.P.* 56 based on her overall lack of evidence of discriminatory intent and failure to show age was the "but for" factor of the hiring decision.

## D.  **Disparate Impact**

Because Plaintiff's Complaint is based on statistical disparities, this claim should also be reviewed under a disparate impact theory of recovery. The following elements must be shown in order to establish a prima facie case of discrimination under a disparate impact theory of recovery: "(1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two."

*Lufkin Indus., Inc.,* 519 F.3d 264, 276 (5th Cir.2008). A plaintiff may assert a disparate impact claim under Title VII or the ADEA. *See City of Jackson, Miss.,* 544 U.S. at 240. However, "the scope of disparate-impact liability under the ADEA is narrower than under Title VII." *Id.* The text of the ADEA, unlike Title VII**,** affords an employer an affirmative defense if the challenged policy is "'based on reasonable factors other than age.'" *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 87, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008).

     Because Plaintiff's Complaint fails to identify a facially neutral personnel policy or practice, she cannot prevail under the disparate impact theory. The Plaintiff's burden in establishing a prima facie case of discrimination goes beyond the need to show that there are statistical disparities in the employer's work force. The Plaintiff must begin by identifying the specific employment practice that is challenged. *Munoz,* 200 F.3d at 300 (citing *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1367 (5th Cir.1992), *cert. denied,* 511 U.S. 1068, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994)). Identifying a specific practice is *not* a trivial burden and is necessary to protect employers from potential liability when the statistical imbalances are the result of legitimate and non-discriminatory employment actions. *Meacham,* 554 U.S. at 100; *City of Jackson, Miss.,* 544 U.S. at 240.

     In *Watson,* the U.S. Supreme Court opined:

> "…The inevitable focus on statistics in disparate impact cases could put undue pressure on employers to adopt inappropriate prophylactic measures. It is completely unrealistic to assume that unlawful discrimination is the sole cause of people failing to gravitate to jobs and employers in accord with the laws of chance. *See Sheet Metal Workers v. EEOC,* 478 U.S. 421, 489, 106 S.Ct. 3019, 3057, 92 L.Ed.2d 344 (1986) (O'CONNOR, J., concurring in part and dissenting in part). It would be equally unrealistic to suppose that employers can eliminate, or discover and explain, the <u>*myriad of innocent causes*</u> that may lead to statistical imbalances in the composition of their work forces. Congress has specifically provided that employers are *not* required to avoid "disparate impact" as such[.]"

108 S.Ct. at 2777

Due to Plaintiff's failure to identify a facially neutral personnel policy or practice, and establish a causal connection between the practice and the statistical imbalances, her claim under the disparate impact theory would fail and must be dismissed according to *Fed. R. Civ. P. 12(b)(6)* or, alternatively, summary judgment should be granted under *Fed.R.Civ.P. 56.*

## VII.    CONCLUSION

Plaintiff's Complaint has failed to evidence unlawful discrimination based on age and sex under both the theories of disparate treatment and impact.  In regards to disparate treatment, Plaintiff has not shown that the hiring decision was motivated by or "but for" discriminatory animus.  Instead, she simply presented statistical disparities devoid of context which is not sufficient to overcome the presented legitimate, non-discriminatory reasons and therefore, results in an unsuccessful disparate treatment claim.

In regards to disparate impact, Plaintiff failed to identify any practice or procedure that resulted in a statistical disparity.  Instead, she solely presented the statistical disparity.  Without an identified practice and causation, a prima facie case will not suffice under the disparate impact theory of recovery.

Plaintiff's Complaint has failed to raise a right to relief above the speculative level. Plaintiff's Title VII and ADEA claims will not prevail under either theory of recovery.  Because

of this, her Complaint should be dismissed according to *Fed. R. Civ. P.* 12(b)(6) or, alternatively,

summary judgment should be granted under *Fed. R. Civ. P.* 56.

      Respectfully submitted,


                          Felicia C. Adams
                          United States Attorney


By:    /S/ AVA N. JACKSON
         AVA N. JACKSON, MSB # 2959



         /S/ FELEICA L. WILSON
         FELEICA L. WILSON, MSB #. 9900
         Assistant United States Attorneys
         Northern District of Mississippi
         900 Jefferson Avenue
         Oxford, Mississippi  38655
         Telephone:    (662) 234-3351
         Facsimile:    (662) 234-3318
         Ava.Jackson@usdoj.gov
         Feleica.wilson@usdoj.gov



Of Counsel:
Leontra M. Mayes
Office of General Counsel – USDA
3201 Federal Building – 700 West Capitol Avenue
Little Rock, Arkansas 72201
Phone: (501) 301-3150

## CERTIFICATE OF SERVICE

I, AVA N. JACKSON, Assistant United States Attorney for the Northern District of Mississippi, hereby certify that I electronically filed the foregoing Memorandum of Law in Support of Defendant, The United States of America, Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

> Dennis L. Horn
> Horn & Payne, PLLC
> P.O. Box 2754
> Madison, MS 39130-2754
> Email:  hornpayne@gmail.com

> Shirley Payne
> Horn & Payne, PLLC
> P.O. Box 2754
> Madison, MS 39130-2754
> Email:  hornpayne@jam.rr.com

This the 22nd day of September 2015.

> /S/ AVA N. JACKSON
> AVA N. JACKSON
> Assistant United States Attorney